HORSFIELD *v.* UNITED STATES (No. 780).[1]

A MIXTURE, ONE-FOURTH WHITES AND THREE-FOURTHS YOLKS, OF EGGS.

This mixture is not dutiable as "eggs, yolk of" simply, for it contains whites of eggs, though in a different proportion from that in the natural egg. It was properly assessed by similitude as eggs, having as it does a similar quality and use with them.

United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7274 (T. D. 31880).

[Affirmed.]

*Joseph G. Kammerlohr* for appellant.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation here consists of 2,600 cases, each case containing 2 tin cans, in each of which are about 43 pounds of a frozen substance

---

composed of the yolks and whites of eggs. It was imported from China, was invoiced as "egg yolk and 25 per cent albumen," and was assessed for duty as eggs not specially provided for at 5 cents per dozen under paragraph 256 of the tariff act of 1909, the number of dozens in the importation being determined upon the premise that 11 eggs were equivalent to 1 pound. The correctness of this premise is not controverted.

The importer protested against the assessment and, upon hearing, the Board of General Appraisers sustained the action of the collector. At the hearing before the board the evidence conclusively showed that the merchandise was composed of yolks and whites of eggs, in the proportion of 3 of the former to 1 of the latter. The importer duly appealed to this court from the judgment of the board, and although other claims were embraced in his protest and in the assignments of error, the only contention we understand he makes before us is that the merchandise should have been classified and held for duty under paragraph 257 of the act, as "eggs, yolk of, twenty-five per centum ad valorem." It is claimed to fall within this classification because the component material of chief value is egg yolk.

The evidence establishes that the egg yolks, if they could be and were separated from the mixture, would be worth about 10 cents per pound; that the whites of the eggs would be worth about 18 or 20 cents per pound; and that upon this basis in 40 pounds of the mixture the value of the egg yolks would be about $3 and the value of the egg whites would be about $2.

The Board of General Appraisers held that the merchandise was eggs by similitude, and the Government here mainly relies upon the contention that the merchandise is so dutiable.

The evidence establishes that this mixture contains the same and only the same ingredients that are found in natural eggs when removed from their shells except that the proportions thereof differ. The natural egg contains about two-thirds white and one-third yolk, while in this importation, as stated, it is one-fourth white and three-fourths yolk.

It will be noticed that the part of paragraph 257 relied upon by the importer refers only to yolk of eggs and does not refer to any substance composed in chief value thereof, and we are, therefore, unable to see upon what ground the importer's contention that the merchandise falls within the classification of that paragraph, because its chief value is egg yolk, can be upheld.

The question is not, under that paragraph, whether it is yolks of eggs *in chief value*, but is it yolks of eggs, and such it is not and can not successfully be claimed to be.

In his protest and assignments of error, although the same do not seem to be relied upon here, the importer has made claim that the merchandise was either a raw unmanufactured article not enumerated or a manufactured article not otherwise provided for under paragraph 480, the component material of chief value of which is yolks of eggs.

If we have misapprehended the importer's contention before us and he has really designed to claim thereunder, it is sufficient to say upon this question that before this paragraph may be invoked, it must be inquired whether the importation does not bear such similitude to some other dutiable article as to subject it to the same rate of duty under the similitude provisions of paragraph 481. We think the merchandise here, as held by the board, clearly comes within that provision.

As to material, the substance is markedly similar to eggs as it contains the same substances except in varying proportions, and is manifestly produced from the same natural sources. In quality, it likewise is similar to eggs, and while there is little in the record to establish the uses to which it is applied, we think it is no unwarranted assumption to say that its general use is for food purposes, similar to eggs.

The Board of General Appraisers found that the mixture bore a sufficient similitude to eggs to require its being assessed as such under paragraph 256 and we think this finding is sustained by the record.

The judgment of the Board of General Appraisers is *affirmed*.